**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**Frank J. SCHROEDER, d/b/a National Apartment Leasing Company, Respondent.**

**No. 83–3106.**

United States Court of Appeals, Third Circuit.

Argued Nov. 16, 1983.

Decided Jan. 23, 1984.

William M. Bernstein (Argued), William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., for petitioner.

John V. Adams, Jr. (Argued), Adams, Shoemaker & McSorley, Pittsburgh, Pa., for respondent.

Before ADAMS and BECKER, Circuit Judges, and NEWCOMER, District Judge.*

## OPINION OF THE COURT

BECKER, Circuit Judge.

This is an application by the National Labor Relations Board seeking enforcement

* Honorable Clarence C. Newcomer, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

of an order based upon violations of sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act, specifically: (1) discharge of an employee because of his union organizing activity; (2) certain threatening statements made to the employee by a crew leader whom the Board found to be a "supervisor" under section 2(11) of the NLRA; and (3) management interrogation of an employee about union organizing efforts. The case presents the important question whether section 8(a)(1) of the NLRA may be interpreted, as it has been by the Board in this case, so that threatening statements made by a person found to be a "supervisor" are conclusively or irrebuttably presumed to be those of the employer for purposes of determining whether an unfair labor practice has occurred.

■ We hold the conclusive presumption to be impermissible. We note, however, that the facts relevant to determining supervisory status may also be relevant to the question whether a person is an agent of the employer with actual or apparent authority to speak on the employer's behalf. This overlap would seem, so long as consistent with section 10(c) of the NLRA, *see infra* typescript at 9, to permit the NLRB, in the exercise of its discretion to allocate burdens of production and proof under the NLRA, *see generally NLRB v. Transportation Management Corp.,* —— U.S. ——, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983), to employ a rebuttable presumption approach. Under such an approach, a finding of supervisory status creates a presumption of agency that the employer may rebut by showing that, despite this status, the employee lacked reason to believe the supervisor spoke on behalf of management. *See NLRB v. Big Three Industrial Gas & Equipment Co.,* 579 F.2d 304, 309–11 (5th Cir.1978) *cert. denied,* 440 U.S. 960, 99 S.Ct. 1501, 59 L.Ed.2d 773 (1979). But the ultimate focus must be on agency, not supervisory status. The NLRB

cannot do what it apparently did here: move straight from a finding of supervisory status to a finding of liability without considering evidence showing that the supervisor did not speak on behalf of management. Accordingly, we decline to enforce those segments of the Board's order relying or seemingly relying on that rule of law.

## I.

The underlying facts of this case are not in serious dispute and, insofar as they are relevant to the major issue on the petition for enforcement, may be summarized briefly. Stephen Grochowski was employed by the respondent, Frank Schroeder, doing business as National Apartment Leasing Company ("NALCO") as a maintenance man. Grochowski's duties were to inspect and make designated repairs in six apartment buildings. Apparently dissatisfied with his wages, Grochowski began what may be characterized as an exploratory organizational campaign, which eventually came to the attention of management. In the process, he encountered NALCO's roofing crew leader Phillip Lentz, whom Grochowski trusted and who he thought could accurately appraise the results of unionization. Lentz told Grochowski that if a union came in, NALCO would fold and that he was afraid he would lose his job. Grochowski responded by saying that if a union could cause the company to fold he, Grochowski, had no right to jeopardize the employees' jobs.

■ Three days later, and after a conversation with another employee, who was attuned to traditional anti-union tactics, Grochowski again encountered Lentz. Grochowski told Lentz that he no longer believed that NALCO would really fold if a union came in. Lentz again expressed fear for his job. Later that afternoon, NALCO fired Grochowski.[1]

---

1. The NLRB found the firing of Grochowski to be an unlawful discriminatory discharge under section 8(a)(3) of the NLRA. Upon careful review and consideration of the arguments, we find substantial evidence on the record to support this conclusion. *See* 29 U.S.C. § 160(c) (1976). Accordingly, we will enforce the Board's order to Schroeder to rehire Grochowski (paragraph 3(a) of the order of the NLRB) and its order that Schroeder expunge from Grochowski's personnel record, or other files, any

Despite a contrary recommendation from the administrative law judge, who found the statements by Lentz to be merely expressions of his personal belief and not any sort of threat, the Board held Lentz's statements to be attributable to NALCO [2] and a violation of section 8(a)(1) of the NLRA:

> We have consistently found remarks like those of Lentz to violate the Act because they may reasonably be said to have a tendency to interfere with the free exercise of employee rights under the Act. Neither the speaker's intent nor the successful effect of such remarks on an employee is material. *El Rancho Market*, 235 NLRB 468, 471 (1978). Accordingly, we find that, by telling Grochowski that [NALCO] would fold and that everyone would lose their jobs if the organizing effort succeeded, Respondent violated section 8(a)(1) of the Act.

There is no indication, however, that the Board considered facts, proffered by the respondents, that tended to show that Lentz had no authority to speak for management and that a reasonable employee would not have reason to believe that he so spoke. Instead, the Board apparently moved directly from the finding that Lentz was a supervisor to the conclusion that the employer had violated section 8(a)(1).

### II.

It is plain from a reading of section 8(a)(1) and from an understanding of the purpose of the NLRA, that statements by persons not legally deemed to be those of the "employer" cannot violate section 8(a)(1) of the NLRA,[3] no matter how threatening, and no matter how clearly they may have a tendency to deter unionization. Employees are and should be free to talk amongst themselves about the likely consequences of unionization on their employment. *Cf.* U.S. Const. amend. I. Only when the employer, who is assumed by law not to have a legally cognizable interest in the organizational status of his employees, steps in and makes threatening statements not reasonably based on facts within his possession does the NLRA step in. *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 617–19, 89 S.Ct. 1918, 1941–1942, 1943, 23 L.Ed.2d 547 (1969).

In general the party with whom the employee has reached a labor agreement, be it an individual or corporation, does not (or cannot) speak individually. Instead, it speaks through specific persons. The NLRA recognizes this obvious fact by defining an "employer" in section 2(2) as including agents, direct and indirect, of the employer. The question before us, then, concerns the circumstances under which the statements of a person other than the nominal employer may be attributed to the employer under theories of agency for the purposes of determining whether section 8(a)(1) has been violated.

The majority of courts of appeals that have recently faced this issue have conclud-

---

reference to this discharge (paragraph 3(b) of the order of the NLRB).

The NLRB also found that, during the same time period, Linda Davies, an agent of the respondent, had interrogated employee John Stewart about Grochowski's organizing efforts. The Board concluded that this interrogation constituted a violation of section 8(a)(1) of the Act. So far as we can discern, respondent has not challenged this finding. At any rate, upon an examination of all the arguments and the record in this case, we find substantial evidence to support the NLRB's finding on this matter. Accordingly, we will enforce paragraph 1 of the NLRB's order, which directs the respondent, his agents, successors, and assigns to "cease and desist from interrogating employees about their union sympathies, desires, or activities, or those of other employees."

**2.** The Board reached this conclusion by way of determining that Lentz was a supervisor. The respondent vigorously protests this finding. Because management may be liable under section 8(a)(1) for certain threatening statements made by persons other than supervisors and because, given the rebuttal evidence put forward in this case, the finding of supervisory status was insufficient to sustain liability, we take no position on the matter.

**3.** Section 8(a)(1) reads: "It shall be an unfair labor practice for an *employer* to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." (Emphasis added).

ed that statements by persons found to be "supervisors" within section 2(11) of the Act are not irrebuttably attributed to the employer. *See, e.g., Connecticut Distributors, Inc. v. NLRB,* 681 F.2d 127, 129 (2d Cir.1982); *NLRB v. Big Three Industrial Gas & Equipment Co.,* 579 F.2d 304 (5th Cir.1978), *cert. denied,* 440 U.S. 960, 99 S.Ct. 1501, 59 L.Ed.2d 773 (1979); *Oil, Chemical & Atomic Workers, International Union v. NLRB,* 547 F.2d 575 (D.C.Cir.1976), *cert. denied,* 431 U.S. 966, 97 S.Ct. 2923, 53 L.Ed.2d 1062 (1977); *NLRB v. Garland Corp.,* 396 F.2d 707, 709 (1st Cir.1968) (dictum). Although the precise details vary from court to court, these circuits have predicated the employer's liability for threats by a supervisor on whether the employee hearing them would have just cause to believe that the supervisor was acting for and on behalf of the employer. The law of agency, applied to conform to the labor environment, provides the rule for attribution.[4]

At oral argument, however, counsel for the NLRB pointed to the decision of the Seventh Circuit in *Jay Foods v. NLRB,* 573 F.2d 438, 444–45 (1978), *cert. denied,* 439 U.S. 859, 99 S.Ct. 176, 58 L.Ed.2d 167 (1978), as support for the reasonableness of the Board's analysis. There, the Seventh Circuit first found an individual who had made threatening statements to be a supervisory employee and in the next sentence concluded that "[i]n light of the Supreme Court's liberal definition of agency in labor cases, Staton [the supervisor] qualifies as an 'employer' within the meaning of the Act."

The fact that management did not know of the supervisor's acts was held irrelevant. *Jay Foods,* 573 F.2d at 445.

To the extent that the Seventh Circuit announced a conclusive presumption in *Jay Foods,* we believe it erred and that the majority resolution of this issue is correct. "Supervisor" is a defined term in the NLRA only for the purpose of excluding certain workers from attaining the status of "employees" under section 2(3) of the Act. This exclusion has consequences because only "employees" are entitled to the protections of sections 7 and 8 of the NLRA, most importantly the right to collective bargaining. *See NLRB v. Yeshiva University,* 444 U.S. 672, 674, 100 S.Ct. 856, 858, 63 L.Ed.2d 115 (1980). But the fact that supervisory employees are thought unsuitable recipients of the benefits bestowed by the NLRA does not lead ineluctably to the conclusion that all actions they take are seen as those of management. Rather, an individualized inquiry should take place in each case as to whether the particular employee, supervisor or not, who made threatening statements without a substantial basis had actual authority to make such statements on behalf of management or was reasonably viewed by his listening employee colleagues as speaking on behalf of management.

The Board may, of course, employ reasonable presumptions to assist it in these inquiries. So, for example, the Board might be able to employ a "rebuttable presumption" approach. The Board would first prove by a preponderance of the evidence that the speaker was a supervisor

---

4. Indeed, our own circuit has arguably reached a similar result. In *Quaker State Oil Refinery Corp. v. NLRB,* 119 F.2d 631 (3d Cir.1941), we stated "isolated statements by minor supervisory employees made casually in conversation with fellow employees without the knowledge of their employer and not in the course of their duties or in the exercise of their delegated authority over those employees ought not to be too quickly imputed to their employer as its breach of the law." The NLRB argues, however, that the statements made by Lentz in this case were not "casual" because they predicted a "total company shutdown." Brief for the National Labor Relations Board at 16. The NLRB adds that *Quaker State* did not deal with

a situation where the statements actually coerced the employee, at least temporarily, to reconsider his pro-union position. While we have serious doubts about these distinctions— the first defines the casualness of a statement by reference to its content rather than by the circumstances under which the statement was made; the second suggests, contrary to section 8(a)(1), that "coercive" statements by *employees* are an unfair labor practice by the employer—we agree that the cited dicta from *Quaker State* is not sufficiently on point to compel us, by virtue of our circuit's strict rule of stare decisis, *see* Internal Operating Procedure Chapter 8 C, to decline enforcement.

within section 2(11) of the Act. The burden would then be placed on the employer to show that, despite his supervisory status, the speaker was not authorized to speak on behalf of management and could not reasonably have been seen so by the threatened employees. The validity of this approach would take into account the admonition of section 10(c) of the NLRA, 29 U.S.C. § 160(c) (1976), that the Board ultimately must prove unfair labor practices by a preponderance of the evidence and would thus likely focus on the existence of a sufficient correlation between supervisory status and agency.[5] The Board cannot use "presumptions," however, to alter the substantive rule of law created by Congress. The NLRB thus cannot, by use of "presumptions," alter section 8(a)(1) of the Act so that it bars coercive statements by "employers and supervisors."

It does not appear that any inquiry such as we have described took place in this case; if such an inquiry did take place, the Board's explication of its reasoning is insufficient to permit enforcement. Accordingly, we will decline enforcement of those portions of the NLRB order relying on a section 8(a)(1) violation [6] resulting from the Lentz statement and will remand for proceedings consistent with this opinion.

---

**5.** Nothing in *NLRB v. Transportation Management Corp.*, 76 L.Ed.2d 667, 103 S.Ct. 2469, —— U.S. ·—— (1983), relieves the Board of the responsibility to prove unfair labor practices by a preponderance of the evidence. Rather, the Court there permitted the NLRB liberally to define the causation element of the offense and to make lack of an alternative form of causation an affirmative defense, which the employer had to prove by a preponderance of the evidence. *Id.* at 2474–75.

**6.** We identify the following sections of the NLRB order as relying on the violation of section 8(a)(1) resulting from the Lentz statements.

Respondents, his agents, successors, and assigns, shall:

\*  \*  \*  \*  \*  \*

2. Cease and desist from:

(a) Threatening employees that Respondent will fold and that employees will lose their jobs if they select union representation.

\*  \*  \*  \*  \*  \*

(c) In any like or related manner interfering with, restraining or coercing employees in the exercise of their right to engage in or refrain from engaging in any and all of the activities specified in section 7 of the Act.