USCA1 Opinion

 

 February 4, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-2008 CUMBERLAND FARMS, INC., Petitioner, v. NATIONAL LABOR RELATIONS BOARD, Respondent. ____________________ ON PETITION FOR REVIEW AND CROSS-APPLICATION FOR ENFORCEMENT OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD ____________________ Before Torruella, Selya and Stahl, Circuit Judges. ______________ _____________________ Philip J. Moss, with whom Moon, Moss, McGill & Bachelder, _______________ ________________________________ P.A., was on brief for petitioner. ____ Deborah E. Shrager, Attorney, with whom Jerry M. Hunter, ___________________ ________________ General Counsel, Yvonne T. Dixon, Acting Deputy General Counsel, ________________ Nicholas E. Karatinos, Acting Associate General Counsel, Aileen _____________________ ______ A. Armstrong, Deputy Associate General Counsel, and Peter _____________ _____ Winkler, Supervisory Attorney, were on brief for respondent. _______ ____________________ ____________________ TORRUELLA, Circuit Judge. This case is before us on _____________ petition to review a decision and order of the National Labor Relations Board (the "Board") filed by Cumberland Farms, Inc. (the "Company"), and the cross-application of the Board to enforce its order.1 The Board found that the Company violated 8(a)(1) and (3) of the National Labor Relations Act (the "Act"), 29 U.S.C. 58(a)(1) and (3) (1973), by engaging in coercive interrogation of its employees regarding their union activities, discharging employees because of these activities, and threatening to arrest a union agent while he distributed handbills on public property. Accordingly, the Board ordered the Company to reinstate the discharged employees with back pay, and to post notices admitting these violations and disclaiming future illegal action. The Company challenges the findings of the Board, claiming that they are unsupported by substantial evidence on the record considered as a whole. We disagree and thus affirm the Board's order. THE FACTS THE FACTS _________ The record supports the Board's finding of the following facts. The Company owns a dairy business that operates four plants, including one in Florence, New Jersey. In the summer of 1990, the United Food and Commercial Workers, Local 1360, United Food and Commercial Worker's International, AFL-CIO (the "Union") began organizing in this plant. Two employees, ____________________ 1 The Board's order is reported at Cumberland Farms, Inc., 307 N.L.R.B. 231 (1992). John Mariano and John Bartosh, distributed union authorization cards to the employees. Shortly after they began the membership drive, their immediate supervisor, Company foreman John Messner, questioned them on several occasions regarding their actions and progress.2 Thomas Sweeney, the Company's Human Resources Director, also questioned Mariano about his union activities in the presence of Bartosh.3 Mariano and Bartosh admitted involvement with the drive. On August 3, 1990, six days after Mariano and Bartosh began distributing Union authorization cards, the Company issued a letter to the employees urging them not to sign. At 5:30 p.m. of the same day, Emanuel Cavaco, the Company's Manager of Dairy Operations, Robert Wood, the Florence plant manager, Sweeney, and plant engineer Allen Canney met with Mariano in a conference room and stated that they had received complaints about his distribution of union authorization cards. Mariano responded that he distributed them during non-working time. Cavaco contended, however, that given the number of complaints received, he must have engaged in these activities during working hours as well. The meeting became more confrontational when Cavaco ____________________ 2 On one occasion, Messner said, "I heard you guys are giving out union cards. I'm all for the union; how's the guys responding? Are you getting a lot signed?" On another occasion, he said: "How are you guys doing? Have you got a lot of cards signed? How's the guys responding? I'm all for the union." 3 Sweeney asked, "Hey, John, . . . anything new I should know about around here, like the union?" -3- accused Mariano of violating a Company no-solicitation rule. After further questioning Cavaco stated, "John, we took you out of the cooler; we put you in with the maintenance to learn something, and this is how you repay us. Do you have anything to say for yourself?" When Mariano said no, Cavaco suspended him indefinitely. Wood and Canney then escorted Mariano off the property and denied him access to his locker. Upon reaching the gate Wood said, "John, didn't we just speak [about a salary increase] a . . . week before this - and then you pull something like this? Do you have anything to say?" Mariano left with the impression that the Company would further investigate. However, a week later, although no further inquiry was made, Mariano received a letter from the Company terminating him due to a "comprehensive investigation concerning the no-solicitation policies." On the day that Mariano was suspended, Cavaco, Sweeney, and Wood subjected Bartosh to a similar interrogation regarding alleged complaints against him for violation of the no- solicitation rule. Bartosh flatly denied these charges. Cavaco reminded Bartosh that the Company treated him favorably by moving him to the maintenance department and that he therefore "owed them." Bartosh was then escorted off the Company premises after he locked his tools. When Bartosh returned to the plant to retrieve his tools, Wood fired him for having solicited on company property. On August 16, various non-employee union organizers, -4- including Mariano and Bartosh, distributed union handbills on the public highway near the Company's plant entrance. Although the organizers were on public property, three Company security officers told one of them that they were on Company property and would be arrested if they did not leave. When they arrived, the Florence police officers indicated that the handbillers were not violating the law. STANDARD OF REVIEW STANDARD OF REVIEW __________________ We uphold the Board's findings of a violation as long as substantial evidence on the record as a whole supports them, even if we would have reached a different conclusion. 29 U.S.C. 160(e) and (f). ANALYSIS ANALYSIS ________ I. Coercive Interrogation I. Coercive Interrogation Section 8(a)(1) of the Act protects employees from coercive interrogation regarding their union activities. NLRB v. ____ Otis Hosp., 545 F.2d 252, 256 (1st Cir. 1976). The existence of __________ coercion is generally a factual issue and depends on the totality of the circumstances, id., including the setting of the ___ interrogation and the status of the interrogators. P.S.C. ______ Resources, Inc. v. NLRB, 576 F.2d 380, 383 (1st Cir. 1978). An _______________ ____ interrogation need not contain explicit threats to be coercive. NLRB v. Gogin, 575 F.2d 596, 600 (7th Cir. 1978). ____ _____ Given the circumstances of this case, we cannot conclude that the evidence does not support the Board's findings regarding the coercive nature of the interrogations. A team of -5- high level managers confronted Mariano and Bartosh shortly after they began their concerted activities, questioned them about their Union affiliation, and accused them of ingratitude. Moreover, during the confrontations, the managers denied Mariano and Bartosh access to the evidence against them, and in essence, denied them an opportunity to defend themselves. Accordingly, the Board reasonably found the interrogations coercive. II. Interfering with lawful Union activities II. Interfering with lawful Union activities An employer lacks a legitimate interest in interfering with union activities which occur away from the employer's property. Threatening to call the police, in the presence of employees, to interfere with lawful union activity violates the Act. NLRB v. Schlegel Oklahoma, Inc., 644 F.2d 842, 843 (10th ____ _______________________ Cir. 1981). In the present case, Company security officers threatened to have the union organizers arrested in front of Mariano and Bartosh, who as unfair labor practice dischargees, continued to retain employee status under the Act, see 29 U.S.C. ___ 152(3). Accordingly, the Board correctly concluded that the threat violated Section 8(a)(1) of the Act. III. Discharge III. Discharge When an employer discharges an employee for supporting a union, he violates the Act, 29 U.S.C 158(a)(3), unless he proves that he would have taken the same action in the absence of the employee's union activities. NLRB v. Amber Delivery Serv., ____ ______________________ Inc., 651 F.2d 57, 68-69 (1st Cir. 1981). The employer fails to ____ meet this burden, however, if the proposed reason for discharge -6- is shown to be a mere pretext to disguise discrimination. NLRB ____ v. Pilgrim Foods, Inc., 591 F.2d 110, 118 (1st Cir. 1979) ___________________ In reaching its determination on motive, the Board may consider the timing of the discharge, id. at 117, any differences ___ in the application of disciplinary rules, NLRB v. S.E. Nichols, ____ ______________ Inc., 862 F.2d 952, 959 (2d Cir. 1988), cert. denied, 490 U.S. ____ _____________ 1108 (1989), the procedures used for discharge, NLRB v. American ____ ________ Spring Bed Mfg. Co., 670 F.2d 1236, 1245 (1st Cir. 1982), the ____________________ investigation of the purported reasons for the discharge, Sioux _____ Products, Inc. v. NLRB, 684 F.2d 1251, 1259 (7th Cir. 1982), and ______________ ____ the purported justifications for the ultimate actions. American ________ Spring Bed Mfg. Co., 670 F.2d at 1245. ___________________ We conclude that substantial evidence on the record as a whole supports the Board's findings regarding the discharges of Mariano and Bartosh. The Company admits that it discharged the employees for distributing union authorization cards. It argues, however, that by distributing those cards, Mariano and Bartosh were soliciting, and that the no-solicitation rule therefore justified the discharges. We conclude, as did the Board, that the Company's reliance on the no-solicitation rule was a pretext to justify discharges for engaging in union activity. At the time of the discharges, the Company knew that Mariano and Bartosh were the in-plant leaders of the union's organizational effort. The Company then coercively interrogated them and then discharged them based solely upon a cursory investigation, affording them no -7- opportunity to defend themselves. Moreover, the Company's employees were generally unaware of the no-solicitation rule, much less its enforcement. Indeed, Mariano and Bartosh were the only employees that the Company ever disciplined for alleged violations of the no-solicitation rule. Accordingly, the Board reasonably determined that the no-solicitation rule was merely a pretextual justification for an illegal discharge. In a final attempt to salvage the validity of the discharges, the Company claimed that Mariano and Bartosh engaged in time card irregularities. However, the Company failed to even mention this serious accusation at the time of the employees' discharges. Thus, the Board reasonably afforded no credit to this argument. CONCLUSION CONCLUSION __________ We have considered all other allegations made by the Company and conclude that they lack merit. The Board's judgment was rational and effectively promotes the goals of the Act. As such, we affirm the Board's order. The petition for review is denied and the Board's ______ request for enforcement of its order is granted. _______ Costs to the Board. -8-