DECISION
This matter is before this Court on an appeal from a decision and order issued by the State Labor Relations Board (SLRB) on February 18, 1994, wherein the Board found the Secretary of State, "Appellant" herein, to have violated three (3) sections of the Rhode Island Unfair Labor Practices statute, G.L. 1956 (1986 Reenactment) § 28-7-13. Jurisdiction for this appeal is pursuant to § 42-35-15.
FACTS AND TRAVEL
During the fall of 1992, the Rhode Island Laborers' District Council (hereinafter, the "Union"), began a Collective Bargaining "Organization Campaign", pursuant to Titles 28 and 36 of the Rhode Island General Laws, together with employees assigned to the Office of the Secretary of State. Darcy Viner, an employee of the Secretary of State, was one such employee who actively participated in the campaign. (Tr. 47, Decision and Order, 4).
In November of 1992, Barbara M. Leonard was elected to the Office of Secretary of State, defeating incumbent Secretary, Kathleen S. Connell (hereinafter, "Connell"). At some point soon after Leonard was sworn in, on or about January 5, 1993, certain positions of employ associated with the Secretary of State's Office were terminated, consolidated, or abolished altogether. One such position was that of Systems Analyst, held by Ms. Viner who had occupied that position for some five years. Ms. Viner was given notice of the abolishment of her position by Edward Cotugno, a member of Leonard's so-called Transition Team and later her Deputy Chief of Staff.
On January 18, 1993, the Union filed an Unfair Labor Practice Complaint with the SLRB, alleging, inter alia, that Viner was an employee of the incumbent Secretary of State who was terminated from her employment as Systems Analyst due to her union activities and her attempts to unionize the employees of that Office. Following the filing of the Unfair Labor Practices charges, the SLRB conducted an informal hearing. On March 4, 1993, a formal Complaint was issued, and a formal hearing was held on May 17, 1993. Both the Union and the Secretary of State presented testimony and evidence and conducted cross-examinations. Mr. Donley, Mr. Cotugno and Ms. Viner were among the witnesses present at the hearing. On February 18, 1994, the SLRB issued its Decision and Order wherein it found the Secretary of State violated sections (3), (5), and (10) of R.I.G.L. § 28-7-13. The Office of the Secretary of State has filed the instant appeal.
STANDARD OF REVIEW
The review of a decision of the Commission by this Court controlled by R.I.G.L. § 42-35-15(g) which provides for review of a contested agency decision:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the Appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. Newport Shipyard v. RhodeIsland Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quoting Caswellv. George Sherman Sand Gravel Co., 120 R.I. 1981,424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency.Berberian v. Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. CoastalResources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflicts ofInterests Commission, 509 A.2d at 458. On review of the Superior Court's judgment, the Supreme Court determines whether legally competent evidence exists to support the decision of the Superior Court. Rhode Island Public Telecommunications Authority, et al.v. Rhode Island Labor Relations Board, et al., December 2, 1994, No. 93-268-M.P. at 20.
The State Labor Relations Board Decision
Initially, the Appellant contends that the SLRB "misstates the facts as contained in the record" by making the following findings of facts:
 6. Viner's activities on behalf of the Union were known to Cotugno and through him by the Transition Team and Leonard.
 7. Viner's activities on behalf of the Union were widely reported in the newspapers and Cotugno was so informed.
 8. Cotugno's statement on or about January 7, 1993, to Donley that "Viner was still involved with the Union" clearly established his knowledge of Viner's activities on behalf of the Union. (Decision, 18; Appellant's Memorandum 7, 8).
Based on those alleged `misstatements' in the Board's Decision, the Appellant argues that the Board's findings are clearly erroneous, arbitrary and capricious, and are not supported by the evidence presented at the hearing. Furthermore, the Appellant argues that the Board arbitrarily and capriciously found that the employer, specifically through her agent Cotugno, had knowledge of Viner's union activities, when in fact the record reflects the contrary. The Appellant further contends that the Union did not sustain its burden of proving that Viner was discharged based on anti-union sentiment, and thus, the Board's decision was arbitrary and capricious, and in error of the law.
It is well-settled that a Superior Court justice can reverse the decision of an administrative agency if he or she finds that there is not substantial evidence on the record to support the Board's findings and conclusions. Because the Rhode Island Unfair Labor Practice statute is virtually identical to the federal analogue found in the National Labor Relations Act, our Supreme Court has recognized "the persuasive force of federal cases . . ." as paradigms for our own case law. Barrington SchoolCommittee v. SLRB, 388 F.2d 1369, 1374 (R.I. 1978). While an employer may discharge an employee for good reason, bad reason, or no reason at all without interference from courts, the Court will intervene where the discharge is motivated exclusively or substantially by union animus. N.L.R.B. v. United Parcel Svcs.,Inc., 317 F.2d 912 (U.S.Ct. App. 1963). Unless the employer can demonstrate that he would have taken the same action in the absence of employee's union activities, and his proposed reason for discharge is shown to be more than a mere pretext to disguise discrimination, the employer fails to meet his burden.Cumberland Farms, Inc. v. N.L.R.B., 984 F.2d 556 (1993).
In the instant case, it is abundantly clear to the Court that, contrary to the Appellant's contentions, the Board not only considered Mr. Cotugno's testimony, but also found it to be replete with inconsistencies. Specifically, the Board stated in its February 18, 1994 Decision and Order,
. . . in order to arrive at its Decision and Order herein, it is essential to review in substantial detail the testimony and exhibits presented to the Board at the Formal Hearing on May 17, 1993. As is, and will be, apparent much depends upon the credibility of the witnesses and the consistency of their testimony not only in relation to the overall facts but in relation to their own testimony.
(Decision and Order at 1, emphasis added).
Thus, it is clear that credibility of witnesses contributed greatly to the Board's findings. For example, the Board thereafter found Mr. Cotugno's testimony to be ". . . inherently inconsistent on numerous issues", particularly with respect to whether he knew of Viner's union activities prior to the abolishment of her position, and thus, the Board "decline[d] to credit his testimony on such issues." As to matters of credibility, this Court is not at liberty to substitute its judgment for that of the agency. Berberian v. Dept. ofEmployment Security, 414 A.2d 480, 482 (R.I. 1980).
It is well-settled in employment discrimination cases, that where legitimacy of an employee's discharge turns on the question of the employer's anti-union motivation, the employee must establish a prima facie case by showing that: 1) the employee was exercising a protected activity; 2) the employer had knowledge of that activity; and 3) the employer possessed union animus. N.L.R.B. v. Transportation Management Corp., 462 U.S. 393
(1983). However, as noted above, even where an employee establishes such a case, the employer is entitled to rebut such evidence by demonstrating that he or she would have taken such action, notwithstanding the employee's activity. CumberlandFarms, 984 F.2d 556, 559 (1993). Indeed, it is incumbent upon the employer to show that the reason for its discharge of the employee was not a disguise or pretext for anti-union sentiment.Id.
The crux of this case turns upon the Secretary of State's motivation behind the abolishment of Viner's position and her attendant discharge. The Court is satisfied that, contrary to Appellant's contentions, the Board had before it sufficient evidence to conclude that Cotugno had knowledge of Viner's union activities at the time of her discharge, and that the Appellee put forth sufficient facts to establish a prima facie case of unlawful motivation in the termination of this employee. It is indisputable that Ms. Viner was engaged in protected activities by participating in the Union. It is evident from Cotugno's testimony which was replete with "numerous inconsistencies and outright contradictions . . ." or inferences that could be drawn therefrom, that the Board could properly find that the witness knew of Viner's union activities prior to her discharge. (Order at 16). More specifically, as the record reveals, Cotugno testified that he signed Viner's termination letter but did not know who authorized it. He also testified that the position of Systems Analyst was eliminated for "budgetary reasons," yet he later stated that the new Secretary hired twelve (12) new employees, but was unable to document how these terminations and new rehiring proved to be more salutary to the new administration's budget.
In essence, the Court finds, as did the Board, that the Appellant failed to put forth sufficient evidence to show that its decision to terminate Viner's position was based on legitimate reasons rather than serving as a disguise for anti-union sentiment. It is also clear from the Board's Order that it not only considered Cotugno's testimony, but it also found that his numerous contradictions rendered it unworthy of credibility. Given that the record reflects these inconsistencies, this Court finds that the Board's conclusions were not arbitrary and capricious. Substantively, the Court is also satisfied the Appellant did not adequately show that the "abolishment" of Viner's position was more than a mere pretext for union animus. Undoubtedly, the record demonstrates that the Board's factual conclusions are not devoid of evidentiary support, as the Appellant suggests. Milardo v. Coastal ResourcesManagement Council, 434 A.2d 266, 272 (R.I. 1981).
The Board's conclusion that Cotugno's testimony was inconsistent vis-a-vis his knowledge of Viner's union activities is also clearly supported by the record. For example, when Cotugno was asked whether he learned that there existed a Union Organization Campaign "in progress" at the time he was hired by the new Secretary of State, he responded that ". . . shortly before we took office, there were articles in the newspaper regarding the unionization of the office and that's how I originally found out about it." [Tr. 5]. When asked whether he knew of Viner's involvement in the campaign, Cotugno testified that ". . . [he] had no knowledge and clue of who wanted to be in the Union. As far as who was an organizer or who wanted to be a member, I'm not sure who was what." (Tr. 16-17). In short, Cotugno testified that he did not know of Viner's union activities prior to giving her notice of the abolishment of her position as Systems Analyst, and learned of her activities only after her termination. He also testified that he first became aware of her participation in the Union when she was nominated to be a union observer, an event that also took place after her termination. (Tr. 18-20). However, the record indicates that several days after Viner had been terminated, Cotugno met with Donley, and gave clear indications that he knew of Viner's involvement in the Union. He specifically stated, according to Donley, who testified before the Board, that he knew Viner was "still involved in the Union", that the "union is going down . . ., and that ". . . he was getting his information and that he knew more than we thought we knew. . .". From these statements and the fact that the union's activities were "widely publicized" in the media, the Board had ample evidence before it from which to conclude that Cotugno had knowledge of Viner's activities.
Moreover, it is apparent from the Board's decision that it found Donley's testimony to be more creditworthy than Cotugno's. In view of this evidence, the Court cannot say that the Board's conclusion is clearly erroneous, arbitrary or not supported by the evidence, thus prejudicing substantial rights of the Appellant. In this case, there exists evidence, including inferences to be drawn from the employer's conduct towards the employee, that Viner's employer, through her agent, was motivated by union animus at the time the employee was discharged, and thus, the Board's finding that the employee was wrongfully discharged because of union activity is supported by the record.See National Labor Relations Act, § 8(a), (1, 3), 29 U.S.C.A. § 158 (a) (1, 3); A.J. Krajewski Mfg. Co. v. N.L.R.B., 413 F.2d 673
(R.I. 1969).
Accordingly, a after review of the entire record, this Court finds that the February 18, 1994 Decision and Order of the State Labor Relations Board is hereby affirmed.
Counsel shall submit an appropriate order for entry.