USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-2343 THE 3-E COMPANY, INC., Petitioner, v. NATIONAL LABOR RELATIONS BOARD, Respondent. ____________________ ON PETITION FOR REVIEW AND CROSS-APPLICATION FOR ENFORCEMENT OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD ____________________ Before Torruella, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ _____________________ Malcolm E. Morrell, Jr., with whom Michael A. Duddy and _________________________ _________________ Eaton, Peabody, Bradford & Veague, P.A., were on brief for ___________________________________________ appellant. Joseph J. Jablonski, Jr., Attorney, National Labor Relations ________________________ Board, with whom Frederick L. Feinstein, General Counsel, Linda ______________________ _____ Sher, Acting Associate General Counsel, Aileen A. Armstrong, ____ _____________________ Deputy Associate General Counsel, and Howard E. Perlstein, Deputy ___________________ Assistant General Counsel, National Labor Relations Board, were on brief for appellee. ____________________ June 3, 1994 ____________________ Per Curiam. In this action, the International ___________ Brotherhood of Electrical Workers, Local Union #567 ("the Union") alleged that The 3-E Company ("3-E") engaged in unfair labor practices. After a hearing, an administrative law judge ("ALJ") found that a 3-E supervisor interfered with and coerced employees in the exercise of their protected right to organize, in violation of 8(a)(1) of the National Labor Relations Act ("the Act"). 29 U.S.C. 158(a)(1). The National Labor Relations Board ("NLRB") subsequently issued a final order affirming the ALJ's findings and adopting its recommended order. 3-E now petitions this Court for review of the NLRB's final order. The NLRB has also filed a cross-application, seeking enforcement of its order. We deny 3-E's petition for review, and grant the NLRB's cross-application for enforcement against 3-E. BACKGROUND BACKGROUND __________ The record supports the NLRB's finding of the following facts. See Cumberland Farms, Inc. v. N.L.R.B., 984 F.2d 556, 558 ___ ______________________ ________ (1st Cir. 1993). 3-E is an electrical contractor that does commercial and industrial projects throughout the State of Maine. In December 1990, 3-E began work on a Sam's Warehouse store ("the Project"). James Lamson was vice-president of 3-E's southern division, and in charge of the Project. Paul Werner was the foreman for the Project. Werner supervised the daily work of employees on the Project. His responsibilities included watching equipment, keeping track of what work each employee performed each day, and completing daily labor reports charting the -2- progress of the Project. In March 1991, 3-E hired Charles Campbell to work full- time as an electrician on the Project. Campbell was not then a member of the Union. In early April 1991, Lamson hired additional electricians, including Elliot Tonken, to work on the Project. Lamson knew that Tonken was a member of the Union, and Tonken made no attempt to hide his Union membership. In April, Tonken had numerous conversations about the Union with Campbell, and with employees Ed Hevey, Roger Hicks, and Paul Lavelle. In mid to late April, Werner noticed that Campbell was talking to Tonken during a break. As their conversation ended, Werner approached Campbell and, in the presence of Hevey and Hicks, asked Campbell if Tonken was talking to him about the Union. Campbell replied that he was. Werner then told Campbell that he did not like the idea that Tonken was talking about the Union on the Project site, and that when there was a layoff, Tonken would be one of the first to be laid off. Werner also showed Campbell a notebook he kept, containing the names of the first group of employees who would be laid off: Tonken, Hevey, Hicks and Lavelle. On or about April 25, 1991, Werner approached Tonken and asked him whether he belonged to the Union. Tonken gave an affirmative response. Werner then asked Tonken if he was there to cause trouble. Tonken replied that he was not, he was just there to do his job. A week or two later, Werner asked Tonken what the Union was like. In reply, Tonken expressed his views -3- regarding the Union. Later in May 1991, 3-E laid off Tonken, as well as Hevey, Hicks and Lavelle. In July 1991, Campbell was transferred to another jobsite. Campbell continued to work for 3-E until September 1991. Based on these events, the Union alleged that 3-E engaged in unfair labor practices. The NLRB subsequently issued a complaint and initiated hearings regarding allegations that a 3-E supervisor interfered with and coerced employees in the exercise of their protected right to organize in violation of 8(a)(1) of the Act. The ALJ found the allegations to be true and recommended that 3-E be ordered to cease and desist from its unfair labor practices and to post notices stating it would no longer interrogate or threaten employees. The NLRB then issued a final order on November 22, 1993, affirming the ALJ's findings and adopting the recommended order. 3-E challenges the findings of the NLRB, claiming in large part that the findings are unsupported by substantial evidence on the record. We disagree. STANDARD OF REVIEW STANDARD OF REVIEW __________________ We uphold a NLRB finding that the Act has been violated as long as the finding is supported by substantial evidence on the record as a whole, even if we would have reached a different conclusion. 29 U.S.C. 160(e) and (f); Cumberland Farms, 984 _________________ F.2d at 559. WAS THE NLRB'S FINAL ORDER SUPPORTED BY SUBSTANTIAL EVIDENCE? WAS THE NLRB'S FINAL ORDER SUPPORTED BY SUBSTANTIAL EVIDENCE? ____________________________________________________________ -4- The Act guarantees employees the right "to form, join, or assist labor organizations . . . and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ." 29 U.S.C. 157. Section 8(a)(1) of the Act implements this guarantee by making it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees" in the exercise of the above mentioned rights. 29 U.S.C. 158(a)(1). An employer violates 8(a)(1) by coercively interrogating employees about their union activities or sentiments, or about the activities or sentiments of others, and by either directly or indirectly threatening employees. See Cumberland Farms, 984 F.2d at 559; N.L.R.B. v. ___ ________________ ________ Otis Hospital, 545 F.2d 252, 256 (1st Cir. 1976). Whether an _____________ employer's actions are coercive depends on the entire factual context in which the actions occur. Cumberland Farms, 984 F.2d ________________ at 559. Substantial evidence on the record supports the NLRB's conclusions that 3-E violated 8(a)(1) of the Act. The record supports the finding that Werner, employed by 3-E as a foreman with supervisory responsibilities, interrogated Campbell, and later Tonken, about their union activities. Werner questioned Campbell about discussions he had with Tonken regarding the Union, and indicated that he disapproved of such discussions on the jobsite. Werner also asked Tonken whether he was a member of the Union, and whether Tonken had come to work for 3-E to cause trouble. Moreover, Werner threatened Campbell and Tonken with -5- layoffs or unspecified reprisals because of their Union activities. Werner substantiated his threat of layoff by showing Campbell a notebook, containing a list of soon-to-be- laid-off-employees: Tonken, Hevey, Hicks and Lavelle. These facts, considered in the context in which the statements were made and the actions taken, support the conclusion that under the totality of the circumstances, 3-E interfered with and coerced employees in the exercise of their protected right to organize in violation of 8(a)(1) of the Act. To a large extent, the ALJ arrived at his conclusion by crediting the testimony of Campbell and Tonken, and giving little weight to the testimony of Werner. An ALJ's credibility determinations are entitled to great weight because he saw and heard the witnesses testify. Holyoke Visiting Nurses Ass'n. v. ______________________________ N.L.R.B., 11 F.3d 302, 308 (1st Cir. 1993) (citations omitted). ________ A reviewing court will not disturb such findings so long as the ALJ's position represents a choice between two fairly conflicting views, even if this Court would have made a different choice had the matter come before it de novo. Id. We will only set aside __ findings if we believe that the ALJ overstepped the bounds of reason. Id. Here, we find no basis to disturb the ALJ's __ reasoned credibility determinations. We also do not believe that the ALJ transgressed the bounds of reason in any other respect. The record also supports the finding that 3-E was bound by the acts and statements of Werner. "In determining whether any person is acting as an 'agent' of another person so as to -6- make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling." 29 U.S.C. 152(13). Rather, in this labor context, courts utilize a liberal agency analysis, emphasizing such factors as a supervisor's "apparent authority." N.L.R.B. v. Schroeder, 726 F.2d 967, 971 ________ _________ (3d Cir. 1984). An employer is generally held responsible for the statements or conduct of its supervisors when employees would have just cause to believe that a [supervisor] was acting for and on behalf of the company. Ballou Brick Co. v. N.L.R.B., 798 F.2d ________________ ________ 339, 347 (8th Cir. 1986); Schroeder, 726 F.2d at 971; Proctor & _________ _________ Gamble Mfg. Co. v. N.L.R.B., 658 F.2d 968, 984 n.18 (4th Cir. ________________ ________ 1981) (quoting N.L.R.B. v. Texas Indep. Oil. Co., 232 F.2d 447, ________ _____________________ 450 (9th Cir. 1956), cert. denied, 459 U.S. 879 (1982); see also ____________ ________ N.L.R.B. v. Garland Corp., 396 F.2d 707, 709 (1st Cir. 1968) (in ________ _____________ dicta, stating that employers are liable for the conduct of supervisors where employees have reason to think that supervisors are acting on behalf of employers). 3-E admits that Werner was a "supervisor" within the meaning of 29 U.S.C. 152(11). The evidence also supports the conclusion that employees reasonably believed that Werner acted on behalf of 3-E with respect to labor and employment matters. Werner was 3-E's only foreman on the Project site, and he exercised broad daily supervisory authority over the workers. Moreover, on occasion, Werner specifically suggested to employees that he had input into 3-E layoff decisions, and that he did not -7- look favorably upon union activities. For instance, Werner told Campbell that he did not think Tonken should be talking about the Union on the Project site, and that Tonken would be one of the first employees laid off. Additionally, 3-E did not proffer evidence which established that despite Werner's supervisory status, employees had notice that Werner was not authorized to speak on behalf of 3-E, or that employees reasonably should have known that Werner did not possess such authority. We therefore uphold the finding attributing Werner's statements and actions to 3-E.1 We have considered 3-E's other arguments and conclude that they lack merit. We believe that the ALJ's findings, adopted by the NLRB, are supported by substantial evidence in the record. The petition for review is denied, and the NLRB's ______ request for enforcement of its order is granted. _______ ____________________ 1 The NLRB properly disavowed the ALJ's discussion concerning whether Werner was specifically authorized by 3-E to make statements or take actions which interfered with employees' union activities as the controlling principle in determining whether Werner's actions were attributable to 3-E. 29 U.S.C. 152(13) specifically provides that such analysis shall not be controlling. Despite 3-E's contention to the contrary, the NLRB did not then simply irrebuttably attribute the statements and actions of Werner to 3-E. Rather, the NLRB did not disclaim, and thus accepted, the ALJ's findings demonstrating that Werner had apparent authority to act on behalf of 3-E. This finding by the ALJ was supported by substantial evidence in the record. -8-