USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1294 NATIONAL LABOR RELATIONS BOARD, Petitioner, v. HORIZONS HOTEL CORPORATION D/B/A CARIB INN OF SAN JUAN, Respondent. ____________________ No. 94-1303 HORIZONS HOTEL CORPORATION D/B/A CARIB INN OF SAN JUAN, Petitioner, v. NATIONAL LABOR RELATIONS BOARD, Respondent. ____________________ ON APPLICATION FOR ENFORCEMENT AND PETITION FOR REVIEW OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD ____________________ Before Torruella, Chief Judge, ___________ Campbell, Senior Circuit Judge, ____________________ and Boyle,* Senior District Judge. _____________________ _____________________  ____________________ * Of the District of Rhode Island, sitting by designation. Luis F. Padilla for Horizons Hotel Corporation. _______________ David Habenstreit, Attorney, National Labor Relations Board, _________________ with whom Frederick L. Feinstein, General Counsel, Linda Sher, _______________________ __________ Acting Associate General Counsel, Aileen A. Armstrong, Deputy ____________________ Associate General Counsel, and Linda Dreeben, Supervisory _______________ Attorney, were on brief for National Labor Relations Board. ____________________ March 3, 1995 ____________________ -2- BOYLE, Senior District Judge. This case presents BOYLE, Senior District Judge _______________________ issues concerning a final order of the National Labor Relations Board (the Board) which concluded that Horizons Hotel Corporation d/b/a Carib Inn of San Juan (Horizons) engaged in unfair labor practices in violation of 8(a)(1), (3), and (5) of the National Labor Relations Act (the Act), 29 U.S.C. 158(a)(1), (3), (5). The claims of unfair labor practices arose in part from the conduct of a bankruptcy trustee who was in possession of the hotel at the time Horizons purchased it. The Board petitions us under 10(e) of the Act, 29 U.S.C. 160(e), to enforce its order, which adopted with modification the opinion and recommended order of the administrative law judge (ALJ). 312 N.L.R.B. No. 200 (Nov. 22, 1993). Horizons petitions us under 10(f) of the Act, 29 U.S.C. 160(f), to review and vacate the Board's order, asserting the following: the Board lacked jurisdiction to act in this case; the conclusions of the ALJ and the Board are contrary to law; and the factual determinations of the ALJ, adopted by the Board, are not supported by substantial evidence. We conclude that the Board's order adopting the ALJ's opinion and proposed order is without error and is to be enforced as it stands. See 29 U.S.C. 160(e), (f). ___ I. STANDARD OF REVIEW I. STANDARD OF REVIEW The appropriate standard of review is provided in 10(e) of the Act, 29 U.S.C. 160(e): "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be -3- conclusive." Thus, a finding of the Board that the Act has been violated is upheld "as long as the finding is supported by substantial evidence . . . even if we would have reached a different conclusion." 3-E Co., Inc. v. NLRB, 26 F.3d 1, 3 (1st _____________ ____ Cir. 1994)(citing 29 U.S.C. 160(e)). In reviewing a Board decision, great weight is afforded the credibility determinations of the ALJ, as he or she had the opportunity to observe the witnesses testify, see id.; Holyoke Visiting Nurses Ass'n v. ___ __ ______________________________ NLRB, 11 F.3d 302, 308 (1st Cir. 1993); therefore, credibility ____ determinations are disturbed only where it is apparent that the ALJ "overstepped the bounds of reason." 3-E Co., Inc., 26 F.3d _____________ at 3; Holyoke Visiting Nurses Ass'n, 11 F.3d at 308 (citing NLRB _____________________________ ____ v. American Spring Bed Mfg. Co., 670 F.2d 1236, 1242 (1st Cir. _____________________________ 1982)). II. BACKGROUND II. BACKGROUND The record supports the ALJ's finding of the following facts, adopted by the Board. See 3-E Co., Inc., 26 F.3d at 2 ___ _____________ (citing Cumberland Farms, Inc. v. NLRB, 984 F.2d 556, 558 (1st ______________________ ____ Cir. 1993)). A. Hotel in Bankruptcy: November 1981 - May 14, 1986 A. Hotel in Bankruptcy: November 1981 - May 14, 1986 In 1981, the Carib Inn hotel and casino in San Juan, Puerto Rico, was owned by the Carib Inn of San Juan Corporation (Carib Inn Corporation). In November 1981, Carib Inn Corporation filed a petition for bankruptcy in the U.S. Bankruptcy Court for the District of Puerto Rico under chapter 11 of Title 11, 11 U.S.C. 1101, et seq. The chapter 11 proceeding was converted ________ -4- to a chapter 7, 11 U.S.C. 701 et seq., proceeding in November _______ 1985. On November 21, 1985, the Bankruptcy Court appointed H ctor Rodr guez-Estrada (Rodr guez) trustee under 29 U.S.C. 1104. As trustee, Rodr guez was ordered to liquidate the assets of the bankruptcy estate. At all relevant times, employees of the hotel's service and casino units1 were represented by Uni n de Trabajadores de la Industria Gastron mica de Puerto Rico, Local 610, Hotel Employees and Restaurant Employees International Union, AFL-CIO (the Union). The service- and casino-unit employees were employed under the terms of a collective bargaining agreement.2 In November or December 1985, Horizons considered the prospect of purchasing the Carib Inn. Horizons submitted a bid for the bankruptcy estate in February 1986. Prior to the bid, Horizons's president, Benito Fern ndez, spent time at the hotel, investigating its operation and its physical grounds. At some point, Fern ndez began to occupy an office at the hotel. The office was located next to that of Rodr guez. Fern ndez and Rodr guez shared a secretary. On April 3, Rodr guez met with Ileana Qui ones, general manager of Professional Employment Center (PEC), a local  ____________________ 1 For a list of the employment positions within the service and casino units, see ALJ's Decision and Proposed Order, appended to In re: Horizons Hotel Corp., et al, 312 N.L.R.B. No. 200 (Nov. ___________________________________ 22, 1993). 2 On March 20, 1986, Rodr guez terminated the collective bargaining agreement pursuant to 11 U.S.C. 365. The propriety of this action is not in question. -5- employment agency. At the meeting, Rodr guez told Qui ones that PEC's services were needed because the hotel was operating under new management which sought to hire new employees. He asked her if there was a possibility that employees hired through PEC would be union workers. She responded that they would not. Rodr guez told Qui ones that he would consider retaining PEC if she could guarantee him that there would be no risk of a union at the hotel. He requested that Qui ones indicate in writing that there was no possibility of a union presence. The following day, April 4, 1986, Qui ones sent a letter to Rodr guez. The letter was addressed as follows: "Sr. H ctor M. Rodr guez-Estrada[,] Horizons Hotel" -- Qui ones was of the belief that Rodr guez was employed as a manager of Horizons. A summary of the items discussed at the previous day's meeting was included with the letter. The first item listed was as follows: "1. There is no possibility for a Union." On May 12 or 13, 1986, Frankie Rosado-Garc a (Rosado), a waiter in one of the hotel's restaurants, and a union steward, while on duty, served the Union's president, who was seated at a table. After Rosado waited on him, Rodr guez, who was present in the restaurant, approached Rosado, and said: "[A-ha] . . . you betrayed me." Rosado later went to Rodr guez' office to question him about the comment. Rodr guez asked Rosado if the Union's president had come "to stop the hotel." He then told Rosado that if the Union continued to bother him, he would fire all union employees. On another occasion in May, Rodr guez told Rosado -6- that the Union was not backing the hotel employees. He said that the Union had failed to collect from the Federal court money owed to the employees. He further stated that there was no union in Puerto Rico that would defend the employees. B. Sale of the Hotel: May 14, 1986 - May 31, 1986 B. Sale of the Hotel: May 14, 1986 - May 31, 1986 On May 14, 1986, a deed was executed whereby Horizons purchased the Carib Inn from Rodr guez. The deed provided that possession of the hotel property would be turned over to Horizons on May 31, 1986. On May 19, 1986, Rodr guez hired Juan Rafael G mez (G mez) as resident manager. That day, Rodr guez circulated a memorandum (May 19 memorandum) announcing the same. Fern ndez had signed the memorandum, expressly indicating his approval of G mez' hiring. On May 21, 1986, Rodr guez circulated a memorandum (May 21 memorandum) to all employees of the Carib Inn, notifying them that Horizons would assume control of the hotel on June 1, 1986, and that all employees would be terminated on May 31, 1986. The memorandum advised the employees that they could apply for positions with Horizons by submitting applications at a recruiting office set up by Horizons in a nearby condominium. The recruiting office would accept applications for two days only. Later that day, May 21, F lix Ram rez, the Union's general steward, and Valent n Hern ndez, the Union's secretary and treasurer, went to Rodr guez' office to discuss with him the -7- memorandum. Rodr guez threatened not to meet with them. He told them that he didn't have to talk with them because they no longer represented the hotel's employees. He stated: "[T]he Union is out," and "Horizons has nothing to do with the Union." Rodr guez finally agreed to meet with them, however, after Hern ndez threatened to report his conduct to the Secretary of Labor for the Commonwealth of Puerto Rico. During the meeting, however, Rodr guez told Ram rez and Hern ndez that they should discuss with G mez any concerns they may have concerning hotel administration. Prior to the May 21 memorandum, PEC had begun soliciting applications for positions at the hotel. Qui ones understood that PEC was to be responsible for hiring Horizons's new employees. It advertised in a local newspaper and collected applications and relevant information on potential employees. It conducted interviews and informed Rodr guez of appealing candidates. Rodr guez, however, advised Qui ones that PEC would do no independent hiring, but rather would hire only those individuals whom it was instructed to hire. Horizons's recruiting program, announced in the May 21 memorandum, was carried out. A representative of PEC was present throughout. Several days after the program, Rodr guez provided G mez a list of individuals to interview. Interviews were thereafter conducted at the hotel. A representative of PEC was present during the interviews. Not one employee of the Carib Inn was interviewed. At one point, Rodr guez told a Carib Inn -8- employee that he had been authorized to hire new employees for Horizons. C. Transfer of Control: June 1, 1986 C. Transfer of Control: June 1, 1986 On June 1, 1986, Horizons assumed possession of the hotel property. Since that date, Horizons has continued the business operations previously conducted by Rodr guez as trustee, and by the Carib Inn Corporation, using substantially the same facilities and equipment, and providing the same services, with the exception of the casino, which ceased operation on June 23, 1986. After the transfer of possession, no service-unit employees previously employed at the hotel were employed by Horizons, with the exception of several former unit employees hired in a supervisory or managerial capacity. See 312 N.L.R.B. ___ No. 200 n.2. Fourteen of Horizons's twenty-four casino unit employees, however, were previously employed at the hotel. At no time did Horizons negotiate or enter into a bargaining agreement with the Union. On June 1, 1986, Horizons hired Rodr guez as a consultant. He later became Horizons's general manager. The Bankruptcy Court confirmed the sale of the Carib Inn to Horizons by order dated June 6, 1986. D. The Present Action D. The Present Action The Union pursued claims against Horizons in August 1986. The Board issued a complaint and notice of hearing on September 30, 1987; an amended complaint and notice of hearing -9- was issued on December 21, 1987. The amended complaint includes the following allegations: that Horizons interfered with, restrained, and coerced employees in the exercise of their rights in violation of 8(a)(1) of the Act, 29 U.S.C. 158(a)(1), by creating the impression of surveillance of employees' union activities, threatening employees with discharge because of their union activities, and attempting to denigrate the Union in the eyes of employees; that Horizons refused to hire former service unit employees in violation of 8(a)(3) of the Act, 29 U.S.C. 8(a)(3); and that Horizons refused to bargain collectively with representatives of the Union in violation of 8(a)(5) of the Act, 29 U.S.C. 158(a)(5). The amended complaint alleges that much of the improper conduct was carried out by Rodr guez, acting as an agent of Horizons. An ALJ conducted hearings on various dates from March 1989 through March 1991. The decision and proposed order issued on January 15, 1993. The ALJ concluded that Horizons violated 8(a)(1), (3), and (5) of the Act, 29 U.S.C. 158(a)(1), (3), (5). The Board, with modification, adopted the ALJ's rulings, findings, and conclusions. In re: Horizons Hotel Corp., et al, ___________________________________ 312 N.L.R.B. No. 200 (Nov. 22, 1993). It amended the ALJ's proposed remedy and order, and ordered the following: that Horizons cease and desist from engaging in unfair labor practices; that it offer positions of employment to the 65 former hotel employees who were not hired by Horizons in violation of the Act; that it bargain collectively with the -10- Union on request; that, on request, it cancel any changes in employment conditions which may have been instituted since it purchased the Carib Inn; that, in the event the casino resumes operation, it bargain with the Union concerning casino employees, and it offer positions to those identified former casino employees who were not hired; and that it preserve records and publish notice of the order. Both the Board and Horizons petition this Court to act. The Board petitions us to enter an order enforcing its order. Horizons petitions us to review and vacate the Board's opinion and order. As grounds, Horizons asserts that exclusive jurisdiction over this matter lies with the bankruptcy court, because much of the allegedly improper conduct was committed by a bankruptcy trustee. Horizons further asserts that as a matter of law it cannot be held accountable for any improper conduct of Rodr guez, the bankruptcy trustee. Finally, Horizons argues that there is insufficient evidence to support the findings that Rodr guez was an agent of Horizons, and that Horizons violated 8(a)(1), (3), and (5) of the Act, 29 U.S.C. 158(a)(1), (3), (5). We examine the issues. III. JURISDICTION III. JURISDICTION Horizons asserts that, because this action concerns conduct of a bankruptcy trustee, it is within the exclusive jurisdiction of the bankruptcy court. In so arguing, it characterizes the present action as a "suit[] against the -11- trustee." Horizons's argument is without merit. The issue was determined in In re: Carib-Inn of San Juan Corp., 905 F.2d 561 ____________________________________ (1st Cir. 1990), a related action commenced by Horizons in the bankruptcy court to enjoin the Board from pursuing the present case. In Carib-Inn, we concluded that the Board had exclusive _________ jurisdiction to determine the merits of the present case, as "[t]he [Board's] complaint . . . is directed solely at Horizons and seeks no remedy against the bankruptcy estate." Id. at 562. __ The cases cited by Horizons are inapposite. See Baron v. ___ _____ Barbour, 104 U.S. 126, 128, 131 (1881)(court of the District of _______ Columbia has no jurisdiction to entertain suit against receiver appointed by a court of the State of Virginia without leave of the appointing court); Leonard v. Vrooman, 383 F.2d 556, 560 _______ _______ (9th Cir. 1967), cert. denied, 390 U.S. 925 (1968)(bankruptcy ____________ court has no jurisdiction to enjoin state action against trustee in bankruptcy for illegally seizing and possessing plaintiff's real property); Vass v. Conron Bros. Co., 59 F.2d 969, 970 (2d ____ _________________ Cir. 1932)(bankruptcy court may enjoin action in state court against receiver in bankruptcy where not commenced with leave of the appointing court); In re: Campbell, 13 B.R. 974, 976 _________________ (D.Idaho 1981)(permission of the bankruptcy court is a prerequisite for state-court action against trustee in bankruptcy for acts done within his authority as trustee). Each concerns an action against a trustee or receiver in bankruptcy; the present case is not an action against the trustee in bankruptcy, Rodr guez, but rather against the purchaser of a bankruptcy -12- estate, Horizons. The Board acted within its jurisdiction under 10 of the Act, 29 U.S.C. 160, in pursuing the present claims, and under 10(e) and (f), 29 U.S.C. 160(e), (f), this Court has jurisdiction "of the proceeding and the question determined therein," and has the power "to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board." -13- IV. ANALYSIS IV. ANALYSIS A. Rodr guez As Agent of Horizons A. Rodr guez As Agent of Horizons ______________________________ Horizons presents two objections to the ALJ's determination, adopted by the Board, that Rodr guez, the trustee in bankruptcy, acted as agent for Horizons prior to June 1, 1986, the date on which possession of the Carib Inn was transferred to Horizons. First, Horizons argues that as a matter of law, as purchaser of a bankruptcy estate it cannot be held accountable for the conduct of the bankruptcy trustee, Rodr guez, which occurred prior to the transfer of the estate. Second, it argues that the finding that Rodr guez was acting as agent for Horizons is not supported by substantial evidence. The Act guarantees employees the right "to self- organize, to form, join, or assist labor organizations, to bargain collectively . . . and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. 157. The Act precludes employers from conducting unfair labor practices, as that term is defined in 8 of the Act, 29 U.S.C. 158. Employers may be liable for the unfair labor practices of their agents. See ___ International Ass'n of Machinists v. NLRB, 311 U.S. 72, 80 ___________________________________ ____ (1940); 3- Co., Inc., 26 F.3d at 3-4; NLRB v. Uni n Nacional de ____________ ____ _________________ Trabajadores, 540 F.2d 1, 8-9 (1st Cir. 1976), cert. denied, 429 ____________ ____________ U.S. 1039 (1977). Agents for whose unlawful conduct employers are responsible need not be employees. See Cagle's, Inc. v. ______________ NLRB, 588 F.2d 943, 947-49 (5th Cir. 1979); Uni n Nacional, 540 ____ ______________ -14- F.2d at 8-9. An employer need not have actually authorized or subsequently ratified the conduct of its agent for it to be liable. 29 U.S.C. 152(13). Rather, an employer is liable for the unlawful conduct of its agent when, under all the circumstances, employees could reasonably believe that the agent was acting for and on behalf of management. See American Press, ___ _______________ Inc. v. NLRB, 833 F.2d 621, 625 (6th Cir. 1987)(citation ____ ____ omitted); Uni n Nacional, 540 F.2d at 8-9. ______________ Horizons contends that as a matter of law, a trustee in bankruptcy cannot be deemed an agent of the purchaser of the estate for whose unlawful conduct the purchase is liable. Horizons argues that the trustee's duties to the bankruptcy estate, and the transfer of the property "free and clear" of encumbrances, preclude the possibility. Horizons points to no authority whatever to support its contention. We find its argument unpersuasive. That Rodr guez may have been duty bound to act for the benefit of the bankruptcy estate is irrelevant and has no bearing on whether he acted on behalf of Horizons. Cf. __ Cagle's, Inc., 588 F.2d at 947 (private employer liable for the _____________ conduct of city chamber of commerce director). The fact that Horizons purchased the hotel "free and clear" of liens and encumbrances and that it did not expressly assume liability for the conduct of any prior owner of the estate is also irrelevant. See In Re: Carib Inn, 905 F.2d at 563-64. Horizons is not here ___ ________________ being held responsible simply for the conduct or liability of a -15- prior owner; it is being held responsible for its own unlawful acts, which were carried out through its agent, Rodr guez, who happened to control the property prior to the transfer of its possession to Horizons. Horizons next argues that the finding that Rodr guez acted as its agent is not supported by substantial evidence. On the record before us, we are satisfied that the ALJ's determination, adopted by the Board, that Rodr guez acted as agent for Horizons is supported by substantial evidence. Rodr guez occupied an office in the hotel next to that of Fern ndez, Horizons's president, and the two shared a secretary; Rodr guez solicited the services of PEC, an employment agency, to recruit employees for Horizons; the May 19 memorandum indicated that Rodr guez acted with the approval of Fern ndez when he hired G mez as resident manager; Rodr guez announced to union representatives that Horizons "has nothing to do with the Union"; he told an employee that he was responsible for determining whom Horizons would hire; and he provided to G mez a list of applicants to interview for positions with Horizons. On the basis of these facts, it is clear that employees of the Carib Inn could reasonably have believed that Rodr guez was acting for and on behalf of Horizons. Furthermore, Horizons never disavowed Rodr guez' conduct; On the contrary, Horizons hired Rodr guez after possession of the hotel was transferred on June 1. Substantial evidence on the record as a whole supports the ALJ's finding, adopted by the Board, that Rodr guez was -16- acting as an agent of Horizons prior to the transfer of the Carib Inn on June 1. See 3-E Co., Inc., 26 F.3d at 3. ___ _____________ B. Violations of the Act B. Violations of the Act _____________________ 1. Section 8(a)(1), 29 U.S.C. 158(a)(1) 1. Section 8(a)(1), 29 U.S.C. 158(a)(1) The Board determined that certain statements of Rodr guez, attributable to Horizons, violated 8(a)(1) of the Act, 29 U.S.C. 158(a)(1). Horizons asserts that the finding is not supported by substantial evidence. Section 8(a)(1) of the Act, 29 U.S.C. 158(a), provides that it is an unfair labor practice for an employer to "interfere with, restrain, or coerce" employees in the exercise of their rights guaranteed by the Act. "An employer violates 8(a)(1) by coercively interrogating employees about their union activities or sentiments, or about the activities or sentiments of others, and by either directly or indirectly threatening employees." 3-E Co., Inc., 26 F.3d at 3 (citing Cumberland ______________ __________ Farms, Inc., 984 F.2d at 559; NLRB v. Otis Hospital, 545 F.2d ___________ ____ _____________ 252, 256 (1st Cir. 1976)). When examining assertedly violative conduct, courts must be mindful that "[i]t is the coercive tendency of employer statements, not their actual effect, that constitutes a violation of the Act." NLRB v. Marine Optical, ____ ________________ Inc., 671 F.2d 11, 18 (1st Cir. 1982)(citations omitted). The ____ Board's inference of coercive tendency will not be disturbed if reasonable, even if susceptible of an alternative interpretation. Id. (citations omitted). __ The Board's determination that Horizons violated -17- 8(a)(1) of the Act, 29 U.S.C. 158(a)(1), is supported by substantial evidence and stands without error. Rodr guez told a hotel employee, Rosado, that he (Rosado) had betrayed him by talking to the Union's president; he then questioned Rosado about his conversation. Thereafter, he told Rosado that all hotel employees would be fired if the Union continued to bother him. These statements are reasonably interpreted as coercive interrogation and direct threats. Considered in context, the statements could reasonably have interfered with or coerced hotel employees in the exercise of their organizational rights. See 3- ___ __ E Co., Inc., 26 F.3d at 3; Cumberland Farms, Inc., 984 F.2d at ___________ _______________________ 559. 2. Sections 8(a)(3) and (1), 29 U.S.C. 158(a)(1), 2. Sections 8(a)(3) and (1), 29 U.S.C. 158(a)(1), (3) (3) The Board, in adopting the findings of the ALJ, found that Horizons's refusal to hire all but several of the hotel's former service-unit employees violated 8(a)(3) and (1) of the Act, 29 U.S.C. 158(a)(1), (3). Horizons argues that this determination is not supported by substantial evidence, and is therefore erroneous. Section 8(a)(3) of the Act, 29 U.S.C. 158(a)(3), declares that it is an unfair labor practice for an employer "by discrimination in regard to hire or tenure of employment . . . to encourage or discourage membership in any labor organization." Where an employer violates 8(a)(3) of the Act, 29 U.S.C. 8(a)(3), by discriminating in its hiring practices to -18- discourage a union presence, it necessarily violates 8(a)(1) of the Act, 29 U.S.C. 8(a)(1), which disallows employers to "interfere with, restrain, or coerce" employees in the exercise of their organizational rights. See, e.g., American Press, Inc., ___ ____ ____________________ 833 F.2d at 624; NLRB v. Horizon Air Services, Inc., 761 F.2d 22, ____ __________________________ 26-28 (1st Cir. 1985); Kallman v. NLRB, 640 F.2d 1094, 1100 (9th _______ ____ Cir. 1981). Generally, a successor employer has the right to operate its business as it wishes. See Elastic Nut Shop Div. of ___ ________________________ Harvard Ind. v. NLRB, 921 F.2d 1275, 1279 (D.C. Cir. 1990)(citing ____________ ____ NLRB v. Burns International Security Services, Inc., 406 U.S. ____ _____________________________________________ 272, 287-88 (1972)). Within this prerogative is the successor's freedom to hire its own work force: "'nothing in the federal labor laws "requires that an employer . . . who purchases the assets of a business be obligated to hire all of the employees of the predecessor . . . ."'" Id. (quoting Howard Johnson Co. v. __ ___________________ Detroit Local Executive Board, 417 U.S. 249, 261 (1974)(citation _____________________________ omitted)). The successor employer may not, however, discriminate against union employees in its hiring. See Fall River Dyeing & ___ ____________________ Finishing Corp. v. NLRB, 482 U.S. 27, 40 (1987)(citations ________________ ____ omitted). Thus, where a successor employer refuses to hire its predecessor's employees because of their union affiliation, it may violate 8(a)(3), 29 U.S.C. 158(a)(3). The test is as follows: If it is proved that the former employees' protected conduct was a substantial or motivating factor for the -19- successor's refusal to hire, the refusal to hire violates 8(a)(3), 29 U.S.C. 158(a)(3), unless the successor proves by a ______ preponderance of the evidence that it "would have taken the same action for wholly permissible reasons." NLRB v. Transportation ____ ______________ Management Corp., 462 U.S. 393, 399 (1983). See also Elastic ________________ ________ _______ Stop Nut Div. of Harvard Ind., 921 F.2d at 1280; Horizon Air _______________________________ ___________ Services, Inc., 761 F.2d at 27. "[I]f the employer [refuses to ______________ hire] an employee for having engaged in union activities and has no other basis for the discharge, or if the reasons that [it] proffers are pretextual, the employer commits an unfair labor practice." Transportation Management Corp., 462 U.S. at 398. _______________________________ In the present case, the Board determined that the General Counsel sustained its burden of proving that the hotel's former service-unit employees' union affiliation was the substantial or motivating factor in Horizons's refusal to hire them. This determination is supported by substantial evidence: Rodr guez, Horizons's agent, indicated to Qui ones that Horizons would utilize PEC's services only on the condition that there be no risk of a union at the hotel; Qui ones responded with a letter confirming that "[t]here is no possibility for a Union"; Rodr guez told a Carib Inn union employee that all union employees would be fired if the Union continued to bother him; Rodr guez told union leaders that "Horizons has nothing to do with the Union"; not one union-affiliated former employee who submitted an application with Horizons was interviewed; with the exception of several individuals who were offered supervisory or -20- managerial positions, no former service-unit employees were hired by Horizons. The Board disqualified as a pretext Horizons's proffered lawful reason for refusing to hire the former employees. This determination also is supported by substantial evidence. Horizons asserted at the administrative proceedings that the former employees were not hired because many of them were not needed, and because they were not competent employees. Fern ndez testified that the former employee's unfitness was determined after he personally observed them, and that their incompetence is evidenced by the fact that the hotel had gone into bankruptcy. The Board, adopting the ALJ's findings, discredited Fern ndez' testimony and rejected Horizons's proffered justification, noting that Horizons submitted no evidence tending to prove that Fern ndez personally observed each former employee, and that it failed to prove its contention that the service employees caused the hotel's bankruptcy. The Board concluded that Horizons's retention of PEC for recruiting services, and its solicitation of applications from former service-unit employees, was conduct intended as a smoke screen to conceal its scheme to keep the Union out of the Carib Inn. Again, this conclusion is well supported by substantial evidence. The Board, in adopting the ALJ's findings, concluded that Horizons violated 8(a)(3) and (1) of the Act, 29 U.S.C. 8(a)(1), (3). This determination is supported by substantial evidence and stands without error. -21- 3. Sections 8(a)(5) and (1), 29 U.S.C. 158(a)(1), 3. Sections 8(a)(5) and (1), 29 U.S.C. 158(a)(1), (5) (5) The Board determined, in adopting the findings of the ALJ, that Horizons violated 8(a)(5) and (1) of the Act, 29 U.S.C. 8(a)(1), (5), by refusing to bargain collectively with the Union, which represented employees of the service and casino units. Horizons asserts that this finding is in error, unsupported by substantial evidence. Section 8(a)(5) of the Act, 29 U.S.C. 158(a)(5), provides that it is an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees." Where an employer violates 8(a)(5) of the Act, 29 U.S.C. 8(a)(5), by refusing to bargain collectively, it necessarily violates 8(a)(1) of the Act, 29 U.S.C. 8(a)(1), which disallows employers to "interfere with, restrain, or coerce" employees in the exercise of their organizational rights. See, e.g., Fall River Dyeing & Finishing Corp., 482 U.S. at 34 & ___ ____ ___________________________________ n.2. Under 8(a)(5), 29 U.S.C. 158(a)(5), "an employer is obligated to bargain with the union representing its predecessor's employees if: (1) the new employer is a 'successor' to the old . . . and (2) a majority of the successor's employees previously were employed by the predecessor." Asseo v. Centro M dico Del Turabo, 900 F.2d 445, _____ ________________________ 450-51 (1st Cir. 1990)(citing Fall River Dying & Finishing Corp., __________________________________ 482 U.S. at 43-52). If these two criteria are satisfied, "a rebuttable presumption of majority status arises, leading to a -22- consequent duty to bargain in good faith." Id. at 451. __ Where a successor employer's unlawful hiring practices preclude the possibility of a majority status in its work force, however, the successor violates the Act by refusing to bargain collectively with the union that had represented the predecessor's employees. Elastic Stop Nut Div. of Harvard Ind., _____________________________________ 921 F.2d at 1282. Thus, with regard to the former union employees of the hotel's service unit, our affirmance of the Board's determination that Horizons violated 8(a)(3) of the Act, 29 U.S.C. 158(a)(3), by refusing to hire them because of their union affiliation compels affirmance of the determination that Horizons violated 8(a)(5), 29 U.S.C. 158(a)(5), as a duty to bargain with the employees' union representatives arose from the violation of 8(a)(3). See Elastic Stop Nut Div. of ___ _________________________ Harvard Ind., 921 F.2d at 1282. ____________ With regard to the hotel's casino-unit employees, the Board's finding of a violation of 8(a)(5), 29 U.S.C. 158(a)(5), is supported by substantial evidence. The Board, in adopting the ALJ's findings, found that the casino continued operations after transfer of possession of the hotel to Horizons on June 1, and that Horizons operated the casino through June 23, 1986. The Board determined that, with respect to casino operations, Horizons was a successor employer. Fourteen of Horizons's twenty-four casino-unit employees were former union employees of the hotel's casino unit. The fact that greater than one-half of the employees in -23- Horizons's casino unit had been union employees of Horizons's predecessor raises a rebuttable presumption that there existed in the casino unit a "majority status." See Asseo, 900 F.2d at 450- ___ _____ 51. Horizons does not assert that it was able to overcome this presumption. Horizons therefore had a duty to bargain with representatives of the former casino-unit employees. Its failure to do so violated 8(a)(5) and (1) of the Act, 29 U.S.C. 158(a)(1), (5). C. The Board's Order C. The Board's Order _________________ Horizons argues that the portion of the Board's order requiring it to "cancel, on request by the Union, any changes in wages and benefits that [Horizons] made when it began operations" is "inappropriate." After a review of the record, we conclude that the Board's order was a reasonable remedy fashioned to address Horizons's violations of 8(a)(1), (3) and (5) of the Act, 29 U.S.C. 158(a)(1), (3), (5). See Horizon Air Services, ___ _____________________ Inc., 761 F.2d at 32-33 (citations omitted)("We respect the ____ Board's special competence and expertise in fashioning remedies. And, where the Board's design is planned out with due regard to supportable findings, sensible reasoning, and an accurate view of the governing law, there is no room for judicial intervention."). V. CONCLUSION V. CONCLUSION The ALJ's findings, adopted by the Board, are supported by substantial evidence on the record as a whole and stand without error. Horizons's request for review is denied, and the ______ Board's request for enforcement of its order is granted. _______ -24-