UNION BUILDERS, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

District Council 94, United Brotherhood
of Carpenters and Joiners of America,
AFL–CIO, Intervenor.

No. 95–1294.

United States Court of Appeals,
First Circuit.

Argued Sept. 9, 1995.

Decided Oct. 20, 1995.

Andrew B. Prescott, with whom Donald P. Rothschild and Tillinghast Collins & Graham, Providence, RI, were on brief for petitioner.

Joseph A. Oertel, Senior Litigation Attorney, National Labor Relations Board, Washington, DC, with whom Fredric L. Feinstein, General Counsel, Hollywood, FL, Linda Sher, Acting Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Charles Donnelly, Supervisory Attorney, National Labor Relations Board, Washington, DC, were on brief, for respondent.

Before TORRUELLA, Chief Judge, ALDRICH and COFFIN, Senior Circuit Judges.

TORRUELLA, Chief Judge.

The petitioner, Union Builders, Inc. ("UBI") seeks review of the decision of the respondent, the National Labor Relations Board ("the Board" or "the NLRB"), ordering UBI to supply requested information to District Council 94, United Brotherhood of Carpenters and Joiners of America, AFL–CIO (the "Union"). The NLRB cross-applies, under § 10(e) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 160(e), for enforcement of its order against UBI. The Board has ordered UBI to cease and desist from violating § 8(a)(5) and (1) of the Act, 29 U.S.C. §§ 158(a)(1) and (a)(5), furnish the Union with the information it requested, and post appropriate notices. For the following reasons, we affirm the Board's Decision and Order.

## I. BACKGROUND

In 1989, a Rhode Island company called O. Ahlborg & Sons ("O. Ahlborg") executed a three-year collective bargaining agreement ("CBA") with the Union. On or about March 24, 1992, O. Ahlborg notified the Union that it planned to terminate the agreement as of May 31, 1992, as was O. Ahlborg's contractual right. As a result of collective bargaining with the Union's then business manager (Herbert F. Holmes), O. Ahlborg reached an agreement (the "Holmes–Ahlborg Agreement") with the Union (confirmed by a letter dated May 29, 1992) whereby a new employ-

er entity, UBI, would be formed. Under the Holmes–Ahlborg Agreement, UBI would enter into a collective bargaining agreement (the "new CBA") with the Union and would continue all union bargaining unit work performed at that time by O. Ahlborg. The Board found that the Holmes–Ahlborg Agreement also provided that, as between UBI and O. Ahlborg, UBI would be allotted all prevailing rate jobs.

Additionally, under the Holmes–Ahlborg Agreement, UBI would assume all employees currently performing union bargaining unit work for O. Ahlborg, and there would be no interruption in production, employment or wages of union members despite the termination of the O. Ahlborg–Union CBA. Shortly thereafter, UBI and the Union entered into the new CBA, which provided that

> [UBI] will not subcontract any work covered by the terms of this agreement which is to be performed at the jobsite except to a contractor who holds an agreement with the United Brotherhood of Carpenters and Joiners of America, or one of its subordinate bodies, or, who agrees, in writing, prior to or at the time of the execution of the sub-contract, to be bound by the terms of this agreement.

The new CBA covered the period from June 1, 1992 to June 4, 1995.

On December 8, 1993, David F. Palmisciano, who had replaced Holmes as union business representative, sent a letter to UBI's chief executive Eric Ahlborg, expressing concern that UBI was "operating a second company" as "an alter ego." The letter also requested that Eric Ahlborg fill out and return an enclosed questionnaire. Eric Ahlborg refused to reply to the questionnaire.

Subsequently, the matter came before an administrative law judge ("ALJ") on the NLRB General Counsel's complaint alleging that UBI violated §§ 8(a)(5) and 8(a)(1) of the Act by refusing to furnish information that the Union alleged was necessary for,

and relevant to, the performance of its duties as the exclusive collective-bargaining representative of unit employees. Palmisciano testified before an ALJ that, during three previous onsite inspections, he saw evidence that UBI had violated his interpretation of the Holmes–Ahlborg Agreement: that as between O. Ahlborg and UBI, UBI would garner all state, Federal and other work with high wage rates, particularly "prevailing rates," and that such work would all go to union carpenters.

The ALJ concluded that the Union reasonably believed that UBI was operating O. Ahlborg as an "alter ego" and subcontracting in a manner that violated the Holmes–Ahlborg Agreement's award of prevailing rate jobs to UBI and its union member employees only.[1] Thus, the ALJ concluded that the Union's reasonable belief justified the request for information, and ordered UBI to comply. The Board affirmed the ALJ's rulings, findings and conclusions, and adopted his recommended Order. UBI seeks review of the Board's decision, and the Board cross-applies for enforcement of its order against UBI.

## II. STANDARD OF REVIEW

■ We will enforce a Board order if the Board correctly applied the law and if substantial evidence on the record supports the Board's factual findings. *Penntech Papers, Inc. v. NLRB*, 706 F.2d 18, 22–23 (1st Cir.1983), *cited in NLRB v. Acme Tile and Terrazzo, Co.*, 984 F.2d 555, 556 (1st Cir. 1993). We uphold the Board's findings of a violation as long as substantial evidence on the record as a whole supports them, even if we would have reached a different conclusion. 29 U.S.C. §§ 160(e) and (f); *3–E Co., Inc. v. NLRB*, 26 F.3d 1, 3 (1st Cir.1994); *Cumberland Farms, Inc. v. NLRB*, 984 F.2d 556, 559 (1st Cir.1993).

---

1. UBI was organized as a Rhode Island corporation on June 1, 1992, to engage in the business of building construction and related activities. UBI's officers are related to, and overlap substantially with, those of O. Ahlborg. For example, UBI's chief executive, Eric Ahlborg, is the son of O. Ahlborg's chief executive; UBI's vice president is the daughter of O. Ahlborg's chief executive; and UBI's chief financial officer, who holds the same position at O. Ahlborg, is another son of O. Ahlborg's chief executive.

## III. DISCUSSION

◼ As part of the § 8(a)(5) duty to bargain, an employer must furnish all information requested by a union that is necessary to the union in order to fulfill its obligation as representative of bargaining unit employees. *NLRB v. Acme Industrial Co.,* 385 U.S. 432, 435–36, 87 S.Ct. 565, 567–68, 17 L.Ed.2d 495 (1967); *NLRB v. New England Newspapers, Inc.,* 856 F.2d 409, 413 (1st Cir.1988). Thus, an employer must produce information that is "relevant to [the bargaining representative's] duties," including information necessary to police the CBA. *New England Newspapers, Inc.,* 856 F.2d at 413. Because the duty to bargain "unquestionably extends beyond the period of contract negotiations and applies to labor-management relations during the term of an agreement," *NLRB v. Acme Industrial Co.,* 385 U.S. at 436, 87 S.Ct. at 568, the Union could have requested the information simply because of its relevance to its ongoing agreement with UBI. In this regard, we note that the Board may determine that the employer has a duty to provide information if it finds even "a *probability* that the information is relevant and that it will be of use to the union in carrying out its statutory duties." *NLRB v. Pfizer, Inc.,* 763 F.2d 887, 889 (7th Cir.1985) (emphasis added). *See also General Electric Co. v. NLRB,* 916 F.2d 1163, 1168 (7th Cir. 1990) (relevance is most often viewed liberally to allow for broad disclosure of information).

◼ As an initial matter, we reject UBI's argument that, via the Holmes–Ahlborg Agreement, the Union approved the coexistence of O. Ahlborg and UBI, and thereby waived its right to challenge O. Ahlborg as UBI's alter ego. UBI has cited neither legal authority nor requisite factual evidence to support its waiver argument. Furthermore, nothing in the Holmes–Ahlborg Agreement shows an unequivocal waiver by the Union of its right to investigate the alleged diversion to O. Ahlborg of prevailing rate jobs. *Communication Workers of America AFL–CIO, Local 1051 v. NLRB,* 644 F.2d 923, 927 (1st Cir.1981) ("the union may relinquish a statutory right only by 'clear and unmistakable' waiver") (quoting *NLRB v. Perkins Machine*

*Co.,* 326 F.2d 488, 489 (1st Cir.1964)). Finally, the ALJ specifically rejected UBI's waiver argument based on the facts presented.

◼ The ALJ correctly distinguished the issue of whether UBI must supply the requested information from the issue of whether O. Ahlborg and UBI are in fact intertwined in an alter ego relationship. We agree that only the information issue bears on this case. With respect to this issue, we are persuaded that we should apply a "discovery-type" standard so that the Union may gather " 'a broad range of potentially useful information ... for the purpose of effectuating the bargaining process'." *NLRB v. Illinois–American Water Co.,* 933 F.2d 1368, 1378 (7th Cir.1991) (quoting *Procter & Gamble Manufacturing Co. v. NLRB,* 603 F.2d 1310, 1315 (8th Cir.1979)). In particular, the Supreme Court has stressed that the Board should apply a more liberal standard of relevance to information requests under the duty to bargain in good faith than would be appropriate at trial. *NLRB v. Acme Industrial Co.,* 385 U.S. 432, 437 & n. 6, 87 S.Ct. 565, 568 & n. 6, 17 L.Ed.2d 495 (1967). Thus, the Union cannot be required to prove that UBI is in breach of its CBA or that O. Ahlborg is UBI's alter ego before the Union can receive information that could help prove such allegations. In deciding to apply such a standard, the ALJ correctly noted that such information does not only benefit unions. In fact, requiring employers to divulge information of even merely potential relevance improves the efficiency of the arbitration system as a whole, since otherwise, unions might be forced "to take grievances all the way through to arbitration without [ ] the opportunity to evaluate the merits of the claim." *Id.* at 438, 87 S.Ct. at 569. As a policy matter, employers as a whole may also benefit, since the information they supply may generally aid unions in filtering out meritless cases. *Id.*

◼ Substantial evidence on the record supports the ALJ's conclusion, adopted by the NLRB, that the Union supplied sufficient objective evidence to show that its belief in requesting the information was reasonable. The record supports the finding that Palmisciano reasonably believed that the purpose of

the Holmes–Ahlborg Agreement was to permit O. Ahlborg to bid nonunion work and to award all "prevailing rate" jobs to UBI. Furthermore, the Union had entered the new CBA with UBI. Thus, the ALJ and the Board correctly concluded that the questionnaire, with its inquiries into UBI's ownership, corporate directors, suppliers and relationship to an alleged nonunion employer, sought information necessary to Palmisciano's collective bargaining duties.

The ALJ heard testimony from Palmisciano regarding the latter's observations at three different job sites. Palmisciano testified that at the three sites, all with O. Ahlborg as general contractor and paying prevailing rates, he had seen Union member UBI employees supervising nonunion employees doing unit work, and he had seen both Union member UBI employees and nonunion workers doing unit work for subcontractors. Additionally, the ALJ questioned Palmisciano regarding the meaning of the Holmes–Ahlborg Agreement, especially with respect to the allotment of work between O. Ahlborg and UBI. Furthermore, the ALJ questioned Palmisciano regarding O. Ahlborg's responses to Palmisciano's demands that O. Ahlborg use union subcontractors on carpentry work at the three job sites.

While UBI takes offense at the ALJ's refusal to hear Eric Ahlborg's testimony to show that UBI and O. Ahlborg had a different understanding of the Holmes–Ahlborg Agreement, the issue before the ALJ was whether Palmisciano could supply objective evidence supporting a reasonable belief that made his information request relevant to his collective bargaining duties. Naturally, the ALJ drew his conclusions primarily from the testimony of Palmisciano, since the chief issue was whether or not Palmisciano's beliefs were reasonable given objective facts.

UBI also argues that because objective facts show that it is not operating an alter ego, Palmisciano could not have had a reasonable belief that would render the requested information relevant. The proposition that a union's information request may be denied if the company in question can show that objective facts render the union's concerns untenable appears logical. *See, e.g.,*

*San Diego Newspaper Guild v. NLRB,* 548 F.2d 863, 867 (9th Cir.1977) ("If the information requested has no relevance to any legitimate union collective bargaining need, a refusal to furnish it could not be an unfair labor practice."). However, in the instant case, the issue is moot, since even if this proposition were settled law applicable here, UBI has not made the required showing.

In the course of this argument, UBI relies on the fact that the relationship between it and O. Ahlborg is not the classic alter ego situation of "a disguised continuance of the old employer." Therefore, runs the argument, because O. Ahlborg is not UBI's alter ego, the Union cannot demonstrate reasonable belief necessary to support its request for information. However, this argument must fail for two reasons.

First, UBI argues that this Court has previously used the existence of a motive to evade labor law responsibilities in corporate organization as a factor in identifying an alter ego, *NLRB v. Hospital San Rafael, Inc.,* 42 F.3d 45, 50 (1st Cir.1994), and that no "disguise" or motive existed here, since the Union knew and agreed to the creation of UBI from O. Ahlborg. However, in *Hospital San Rafael,* the Court also called cases that involve formation of new entities with direct evasionary intent only "the easiest example[s]" of alter egos. *Id.* Presumably there are also harder examples, as the Union may show here.

Additionally, even if the issue before us here were whether O. Ahlborg constituted UBI's alter ego, the paper relationship between the two corporations would not be dispositive, since the alter ego doctrine looks behind the corporate form to determine whether nominally distinct corporations are "in truth ... but divisions or departments of a 'single enterprise.'" *NLRB v. Deena Artware, Inc.,* 361 U.S. 398, 402, 80 S.Ct. 441, 443, 4 L.Ed.2d 400 (1960). Note that this Court has previously upheld the Board's finding of an alter ego "where the companies were not successors but rather parallel operations." *C.E.K. Industrial Mechanical Contractors, Inc. v. NLRB,* 921 F.2d 350, 354–55 (1st Cir.1990) (denying enforcement of the Board's order on other grounds). Thus, the

fact that O. Ahlborg did not succeed UBI does not, by itself, render the alter ego doctrine inapplicable and Palmisciano's belief unreasonable.

 Thus, the ALJ correctly avoided turning the hearing into an inquiry into the agreement's ultimate meaning, since such a decision was beyond the scope of the only issue before him: whether or not to compel information disclosure. With respect to testimony directed at this question, an ALJ's credibility determinations are entitled to great weight because the ALJ saw and heard the witnesses testify. *Holyoke Visiting Nurses Ass'n v. NLRB,* 11 F.3d 302, 308 (1st Cir.1993), *cited in 3–E Co., Inc. v. NLRB,* 26 F.3d 1, 3 (1st Cir.1994). We will set aside findings only if we believe the ALJ overstepped the bounds of reason. *Id.* Here, we find no such transgression.

## IV. CONCLUSION

The ALJ's findings, adopted by the Board, are supported by substantial evidence on the record as a whole and stand without error. UBI's request for review is denied, and the Board's request for enforcement of its order is granted. Costs to respondent.